UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

BRENDA STOKELY, CHUCK MOHAN          :
and GLORIA JACKSON,
                                     :
                    Plaintiffs,
                                     :    05 Civ. 2051 (GBD)(HBP)
      -against-
                                     :    REPORT AND
RAGLAN GEORGE, JR., individually          RECOMMENDATION
and as Executive Director of         :
District Council 1707, AFSCME,
AFL-CIO, and DISTRICT COUNCIL        :
1707, AFSCME, AFL-CIO,
                                     :
                    Defendants.
                                     :
----------------------------------X


            PITMAN, United States Magistrate Judge:


            TO THE HONORABLE GEORGE B. DANIELS, United States

District Judge,


I.  Introduction


            Plaintiffs move for an award of attorney's fees in the

amount of $45,322.75.  I respectfully recommend that the motion

be granted to the extent of awarding plaintiffs attorney's fees

in the amount of $44,535.25.


II.  Facts


            The facts giving rise to the present controversy are

largely undisputed.

Plaintiff Brenda Stokely formerly served as president of District Council 1707 of the American Federation of State, County and Municipal Employees, AFL-CIO ("DC 1707"). Her three-year term commenced May 2002 and was scheduled to expire on May 17, 2005. At the time of her election, Stokely had been employed by the New York Association for New Americans ("NYANA").

On December 3, 2003, NYANA laid Stokely off, terminating her salary. DC 1707 filed a class action grievance as a result of the layoff and arbitration proceedings were commenced. As of March 2005, the arbitration proceedings were still pending.

In January 2004, DC 1707's Executive Board voted to grant Stokely a stipend equivalent to 60% of her NYANA salary. Although the DC 1707's constitution prohibited salaried employees of DC 1707 from serving as officers, it appears that stipends, such as that provided to Stokely, do not disqualify a member from holding office. Specifically, Article VIII, Section 2 of DC 1707's constitution provides:

> Except as specifically provided in this constitution, the acceptance of any full-time salaried employment with the council or with the International Union by any board member shall automatically and immediately vacate such office. Reimbursement of lost time, stipends or per diem allowances for functioning on any council or International Union instrumentality shall not be deemed salaried employment but must be promptly reported to the executive board and recorded in its minutes. The executive board may make such allowances to the board members for their service on the board as it deems proper and pay compensation to the executive director as authorized in this constitution and such payments shall not bar them from their respective offices.

(Exhibit D to the Declaration of Brenda Stokely, dated February 11, 2005 ("2-11-05 Stokely Decl.") at 13).

According to Stokely, DC 1707 had previously provided similar stipends to union officials who had lost their jobs and a grant of such a stipend was not an extraordinary event (2-11-05 Stokely Decl. ¶ 11). Defendant George was in attendance at the meeting at which Stokely was granted the stipend (2-11-05 Stokely Decl. Ex. A).

During the latter half of 2004, Stokely claims that she had openly criticized George and that there was speculation that she would run in 2005 to replace George as Executive Director of DC 1707 (2-11-05 Stokely Decl. ¶ 20). On January 14, 2005, allegedly as a result of her criticism of George, George removed Stokely from the office of president, claiming that it had recently "been brought to [his] attention" that Stokley's receipt of a stipend made her a full-time salaried employee of DC 1707 who was, therefore, ineligible to serve as an officer of DC 1707 (2-11-05 Stokely Ex. E). The minutes of the January 2004 executive board meeting that voted for Stokely's stipend do not reflect any concern that the stipend would render her ineligible to serve as president (2-11-05 Stokely Ex. A at 2-3). Curiously, George's 2005 memo to Stokely advising her of her removal from office does not disclose what lead to his claimed recent discovery.

As a result of the foregoing, plaintiff commenced this
action on February 14, 2005 alleging that defendants had violated
Section 101(a) of the Labor-Management Reporting and Disclosure
Act of 1959 ("LMRDA")[1], 29 U.S.C. § 411(a), and Section 301 of
the Labor Management Reporting Act ("LMRA")[2], 29 U.S.C. § 185, by
removing plaintiff from the office of president in retaliation
for her criticism of George.  Upon the commencement the action,
the Honorable George B. Daniels, United States District Judge,
issued an Order to Show Cause directing defendants to show cause

---

[1]Section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2)
provides:

### (2) Freedom of speech and assembly

Every member of any labor organization shall have
the right to meet and assemble freely with other
members; and to express any views, arguments, or
opinions; and to express at meetings of the labor
organization his views, upon candidates in an election
of the labor organization or upon any business properly
before the meeting, subject to the organization's
established and reasonable rules pertaining to the
conduct of meetings:  Provided, That nothing herein
shall be construed to impair the right of a labor
organization to adopt and enforce reasonable rules as
to the responsibility of every member toward the
organization as an institution and to his refraining
from conduct that would interfere with its performance
of its legal or contractual obligations.

[2]Among other things, Section 301 of the LMRA, 29 U.S.C. §
185, grants district courts subject matter jurisdiction on some
disputes by union members concerning violations of a union's
constitution.  See Wooddell v. Int'l B'hood of Elec. Workers, 502
U.S. 93, 100-02 (1991); Shea v. McCarthy, 953 F.2d 29, 30-31 (2d
Cir. 1992).

on or before March 1, 2005 why a preliminary injunction should
not issue reinstating Stokely as president of DC 1707.

A hearing on the plaintiffs' application was held on
March 3, 2005.  At the conclusion of the hearing, Judge Daniels
issued a preliminary injunction directing that Stokely be rein-
stated as president of DC 1707.  In granting this relief, Judge
Daniels focused on whether Stokely's removal was justified by the
union's constitution; he did not address whether the LMRDA had
been violated (Transcript of Proceedings held on March 3, 2005
(Docket Item 15) at 68-74).

Stokely was not re-elected at the conclusion of her
term in May 2005, thereby rendering further injunctive relief
moot.  In addition, Stokely has waived her claim for monetary
damages.

Plaintiffs now seek to recover the reasonable attor-
ney's fees incurred in restoring Stokely to office.

III.  <u>Analysis</u>

   A.  Plaintiffs' Entitlement
       <u>to Attorney's Fees</u>

Plaintiffs contend that they are entitled to attorney's
fees under the "common benefit" theory.  "Under that theory,
counsel fees are granted, not because of the 'bad faith' of the
defendant but, rather, because the litigation confers substantial

benefits on an ascertainable class of beneficiaries."  <u>Hall v.</u>
<u>Cole</u>, 412 U.S. 1, 15 (1973).  "Union members who succeed in
vindicating rights guaranteed by Section 101 of the LMRDA may
recover attorney's fees when the effect of the attorney's ser-
vices has been to benefit the union and all of its members."
<u>Local Union 38, Sheet Metal Workers' Int'l Ass'n v. Pelella</u>, 350
F.3d 72, 90 (2d Cir. 2003).

          One difficulty with plaintiff's argument is that
although she alleged that her LMRDA right to freedom of speech
was violated by the allegedly retaliatory ouster, Judge Daniels
made no finding in that regard.  At the conclusion of the prelim-
inary injunction hearing, the Court found that Stokely was
entitled to reinstatement not because retaliatory animus played a
role in her removal from office but because the DC 1707 constitu-
tion did not permit her removal (Transcript of Proceedings held
on March 3, 2005 (Docket Item 15) at 68-74).  The issue of
retaliation was immaterial to this analysis.

          For example, in reaching its conclusion that plaintiff
was likely to succeed on the merits, Judge Daniels stated:

          I've read both the constitutional provisions and
          the International's constitution.  I find that I agree
          initially with the defendant's original interpretation
          of the constitution, that there's nothing in the con-
          stitution that prohibits paying either a stipend or a
          per diem allowance to an officer.  It is not dependent
          on the amount of such stipend or per diem allowance,
          and it does not depend on the reasons that a person is
          given a stipend or allowance.

What the constitution prohibits, it prohibits that a person who decides to become a salaried employee of the union is no longer eligible to be an officer of the union.

The definition that the defendants urge, which is a reversal of their position when the board voted to provide this allowance, is that she derives a substantial portion of her salary or income from employment with the council, and, therefore, that makes her a salaried employee and ineligible to serve as president.

I may be convinced, although I doubt it, but I may be convinced further down the road if this case goes further that that is the proper reading of this constitution. But in my initial reading of this constitution I think the language is consistent with the way all the parties proceeded when this allowance was voted and paid, and paid for approximately a year without any concern that there was a violation of the constitution.

The fact that they decided to give her this and it turned out to be an amount of money which was substantially or the only amount of money which she was receiving and subsisting on does not convert it into a salary. She did not have a salaried position with the union. She had no job title with the union. She had no responsibilities with the union for with which an employee would be paid, for which the union either prior to that time or after that time designated as a job with the union.

(Transcript of Proceedings held on March 3, 2005 (Docket Item 15) at 68-69). The foregoing demonstrates that Judge Daniels never reached the issue of retaliation; rather, the Court was ruling that Stokely's removal was improper regardless of the motive. Thus, the initial legal issue is whether the common benefit theory will support an award of attorney's fees for a judgment based on the violation of provisions of a union's constitution concerning the election of officers.

Although neither the parties nor myself have found any authority directly addressing the issue, I find that this litigation did confer a common benefit on DC 1707's members even in the absence of a finding that defendants violated Section 101 of the LMRDA, namely, as a result of Stokely's action, the right of the union members to choose their own president was enforced. The right to vote for officers is a fundamental right of the members of labor organizations. "Section 101(a)(1) of the LMRDA, also known as a union member's 'Bill of Rights,' provides union members with equal rights to vote and take part in union business." Barry v. Fishman, 02 Civ. 6895 (DC), 2002 WL 31729502 at *2 (S.D.N.Y. Dec. 5, 2002); see also Citizens for a Better Union v. Bevona, 152 F.3d 58, 65 (2d Cir. 1998) (LMRDA prevents union from affording unequal voting rights to members); Yablonski v. United Mine Workers of Am., 466 F.2d 424, 431 (D.C. Cir. 1972) ("In passing LMRDA, the concern of Congress was focused, more intently than upon anything else, on the overriding importance to union democracy of free and fair elections.").[3] By seeking and obtaining reinstatement, Stokely conferred a common benefit on all union members who voted for her (presumably, the majority of

---

[3]I am not suggesting that a union's failure to recognize the results of a validly held election constitutes a violation of Section 101 of the LMRDA. See Barry v. Fishman, supra, 2002 WL 31729502 *2. Nevertheless, Congress's recognition that all union members are entitled to equal, non-discriminatory treatment with respect to voting demonstrates the importance of the right.

union members voting), regardless of whether her removal from office was retaliatory. Accordingly, I conclude that the absence of a violation of Section 101 of the LMRDA is not an impediment to the application of the common benefit theory.

Defendants also contend that an award of attorney's fees is improper because there was no final judgment and, according to defendants, the case is not moot.

Defendants' argument here is addressed to plaintiff's damages claim. As noted above, Stokely was not re-elected to the position of president of DC 1707 in May 2005 and her right to hold that office expired at that time. Thus, to the extent plaintiffs were seeking injunctive relief, the case was moot as of the expiration of her term. When the action was commenced, however, plaintiffs were also seeking damages equal to the stipend payments Stokely had been denied upon being ousted from the office of president. After succeeding on the motion for a preliminary injunction, plaintiffs decided not to pursue this claim for damages because (1) monetary damages constituted a personal benefit and not something that benefitted the union's membership as a whole, and (2) unlike her right to hold office, she had no constitutional right to the stipend and the union's executive board arguably had the right to terminate her stipend. Since damages are no longer in issue and additional injunctive relief is unavailable, the case is moot.

An analogous situation was presented in <u>Yablonski v.</u>
<u>United Mine Workers of America</u>, <u>supra</u>, 466 F.2d at 431, in which
the plaintiff succeeded in obtaining preliminary relief in three
out of four separate actions brought under the LMRDA.  The
plaintiff was murdered before further proceedings could be held
in the cases, and the defendants argued that the absence of a
final judgment precluded an award of attorney's fees.  The Court
of Appeals rejected this argument, stating:

> It is suggested that it is unfair to impose attor-
> ney's fees in cases which have never reached final
> adjudication on the merits.  The Supreme Court in
> <u>Mills[ v. Electric Auto-Lite Co.</u>, 396 U.S. 375 (1970)],
> however, noted that the relevant inquiry is not into
> the technical posture of the litigation, but whether it
> "has conferred a substantial benefit on the members of
> an ascertainable class."  396 U.S. at [3]93-[3]94, 90
> S.Ct. at 626.
>
> It is not decisive in this instance that three of
> the suits never got beyond the issuance of preliminary
> injunctions, and the fourth failed even to do that.
> The fact is that in the former three cases the prelimi-
> nary injunction was the critical step and procured all
> the relief required; and in the fourth case the very
> filing of the complaint and the holding of a hearing on
> the motion for a preliminary injunction effected a
> change of position by the defendants which warranted
> the court's conclusion that no mandatory order was
> necessary to achieve the plaintiff's aims.  As all
> lawyers know, a lawsuit does not always have to go to
> final adjudication on the merits in order to be effec-
> tive.  Assuming the effectiveness in terms of practical
> results, the litigating stage attained is relevant only
> to the amount of the fees to be allowed, and not to the
> issue of whether they should be awarded at all.

466 F.2d at 431; <u>see</u> <u>also</u> <u>Johnson v. Kay</u>, 742 F. Supp. 822, 835-
36 (S.D.N.Y. 1990) (awarding attorney's fees where plaintiff

awarded preliminary injunction and balance of action rendered
moot by changed in union leadership); Goldberg v. Hall, 87 Civ.
8025 (VLB), 1988 WL 215393 at *3-*4 (S.D.N.Y. July 28, 1988)
(awarding attorney's fees where union reversed conduct in issue
after commencement of action but before the court issued any
ruling).

In this case, I find that the litigation did reach a
"critical step" and did result in a substantial benefit to the
union notwithstanding the fact that no final judgment was en-
tered.  The litigation restored Stokely to office for the remain-
der of her term and that action benefitted the union by reinstat-
ing the individual who had been duly elected president.  The
vindication of the members' right to select their own officers
benefitted all members of the union.  See Cherry v. Transport
Workers Union of Greater New York, 80 Civ. 2286 (WCC), 1980 WL
8126 at *2 (S.D.N.Y. Aug. 29, 1980) ("The Supreme Court stated in
Hall, 412 U.S. at 8, that 'to the extent that [LMRDA] suits
contribute to the preservation of union democracy, they fre-
quently prove beneficial "not only in the immediate impact of the
results achieved but in their implications for the future conduct
of the union's affairs."'").  Thus, the absence of a final
judgment does not preclude an award of attorney's fees.

Finally, defendants argue that plaintiffs should not be
awarded attorney's fees because Stokely allegedly misrepresented

to the Court that she was not an employee of DC 1707. This facet of defendant's argument is based on Stokely's application for New York State unemployment benefits after the termination of her stipend in which she claimed that she was an employee of DC 1707.

Defendants' argument is unconvincing. The term "employee" has multiple meanings in different contexts. Faris v. Williams WPC-I, Inc., 332 F.3d 316, 319 (5th Cir. 2003); Smith v. Bellsouth Telecomm., Inc., 273 F.3d 1303, 1310 (11th Cir. 2001); Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 427 F.2d 862, 871 (4th Cir. 1970). Indeed, the word has even been held to have different meanings in different provisions of the same statute. Robinson v. Shell Oil Co., 519 U.S. 337, 343-344 (1997) ("employee" has different meanings in different parts of Title VII). In the absence of proof, which defendants do not offer, that the term "employee" in the union's constitution was intended to be coextensive with the definition of "employee" in New York's unemployment insurance statutes, Stokely's application for unemployment benefits cannot be construed to constitute an inconsistent statement.

Accordingly, since the commencement of this action did confer a significant common benefit in all members of DC 1707 as a whole, I find that an award of attorney's fees is appropriate in this matter.

B.  <u>Amount of the Award</u>

The standards applicable to determining the amount of the fee to be awarded were set forth in Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers, 34 F.3d 1148, 1159 (2d Cir. 1994):

> In determining reasonable attorneys fees the court must calculate a "lodestar" figure based upon "the hours reasonably spent by counsel . . . multiplied by the reasonable hourly rate." F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987) (internal quotation marks and citation omitted). The "lodestar" figure should be "in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984); see also Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").  We have stated that the "prevailing community" the district court should consider to determine the "lodestar" figure is "the district in which the court sits," unless there has been a showing that "special expertise of counsel from a . . . [different] district [was] required." Polk v. New York State Dep't of Correctional Servs., 722 F.2d 23, 25 (2d Cir. 1983).

See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 562-66 (1986) (there is a "strong presumption" that the product of the number of hours reasonably expended and a reasonable hourly rate represents a reasonable fee); Blum v. Stenson, 465 U.S. 886, 897 (1984) (if a fee applicant "has carried his burden of showing that the claimed rate and

number of hours are reasonable, the resulting product is presumed to be the reasonable fee . . .").

        If the lodestar amount is challenged, courts may also consider the following additional factors in assessing the reasonableness of the fee:  "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983), citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974); see also Pinkham v. Prof'l Claims Bureau, Inc., 367 F. Supp.2d 338, 340 (E.D.N.Y. 2005) (outlining the twelve Hensley factors); Auscape Int'l v. Nat'l Geographic Soc'y, 02 Civ. 6441 (LAK)(HBP), 2003 WL 22127011 at *2 (S.D.N.Y. Sept. 15, 2003) (noting that the "lodestar figure enjoys a 'strong presumption' of correctness; Hensley factors need be addressed only where one party seeks to adjust the lodestar figure").  With respect to the factors considered, "[t]he Supreme

14

Court has consistently stressed the importance of the degree of the plaintiff's success in the litigation as a factor affecting the size of the fee to be awarded." Kassim v. City of Schenectady, 415 F.3d 246, 253 (2d Cir. 2005), citing Hensley v. Eckerhart, supra, 461 U.S. at 436 and Farrar v. Hobby, 506 U.S. 103, 114 (1992); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 760 (2d Cir. 1998).

The hours actually expended and the rates actually charged are, of course, not dispositive. Foster v. Kings Park Cent. Sch. Dist., 174 F.R.D. 19, 27 (E.D.N.Y. 1997). An award of fees must be limited to the number of hours reasonably expended and limited to reasonable hourly rates. As the Second Circuit has cautioned: "[A]ttorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1139 (2d Cir. 1982) (internal citations and quotations omitted).

1. Reasonableness of
the Hours Expended

The Honorable Loretta A. Preska, United States District Judge, has summarized the factors to be considered in assessing the reasonableness of the hours claimed in a fee application:

> To assess the reasonableness of the time expended
> by an attorney, the court must look first to the time
> and work as they are documented by the attorney's

15

records.  See Forschner Group, Inc. v. Arrow Trading
Co., Inc., No. 92 Civ. 6953 (LAP), 1998 WL 879710, at
*2 (S.D.N.Y. Dec. 15, 1998).  Next the court looks to
"its own familiarity with the case and its experience
generally . . . .  Because attorneys' fees are
dependent on the unique facts of each case, the
resolution of the issue is committed to the discretion
of the district court."  AFP Imaging Corp. v. Phillips
Medizin Sys., No. 92 Civ. 6211 (LMM), 1994 WL 698322,
at *1 (S.D.N.Y. Dec. 13, 1994) (quoting Clarke v.
Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (quoting
DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir.
1985))).

          . . . .

          Finally, billing judgment must be factored into
the equation.  Hensley, 461 U.S. at 434; DiFilippo, 759
F.2d at 235-36.  If a court finds that the fee
applicant's claim is excessive, or that time spent was
wasteful or duplicative, it may decrease or disallow
certain hours or, where the application for fees is
voluminous, order an across-the-board percentage
reduction in compensable hours.  In re "Agent Orange"
Products Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987)
(stating that "in cases in which substantial numbers of
voluminous fee petitions are filed, the district court
has the authority to make across-the-board percentage
cuts in hours 'as a practical means of trimming fat
from a fee application'" (quoting Carey, 711 F.2d at
1146)); see also United States Football League v.
National Football League, 887 F.2d 408, 415 (2d Cir.
1989) (approving a percentage reduction of total fee
award to account for vagueness in documentation of
certain time entries).

Santa Fe Natural Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00

Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002);

see also Hensley v. Eckerhart, supra, 461 U.S. at 434; accord

Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998); Orchano

v. Advanced Recovery, Inc., 107 F.3d 94, 98 (2d Cir. 1997);

Sulkowska v. City of New York, 170 F. Supp.2d 359, 365 (S.D.N.Y. 2001).

The party seeking fees bears the burden of establishing that the number of hours for which compensation is sought is reasonable. Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, supra, 34 F.3d at 1160, citing Hensley v. Eckerhart, supra, 461 U.S. at 437; Patrolmen's Benevolent Ass'n of New York v. City of New York, 97 Civ. 7895 (SAS), 98 Civ. 8202 (SAS), 2003 WL 21782675 at *2 (S.D.N.Y. July 31, 2003), citing Blum v. Stenson, supra, 465 U.S. at 897.

Plaintiff has submitted what appear to be contemporaneous time records as required by New York State Association for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1147-48, for the two attorneys who worked on the case that set forth the date on which services were performed, the hours spent and the nature of the work performed. See Wells Fargo Bank v. BrooksAmerica Mortgage Corp., 02 Civ. 4467 (HB), 2004 WL 2754855 at *1 (S.D.N.Y. Dec. 1, 2004), quoting Mikes v. Straus, 274 F.3d 687, 706 (2d Cir. 2001). Specifically, plaintiff's counsel has submitted what appears to be computer printouts reflecting professional services rendered (Exhibit E to the Declaration of Daniel E. Clifton, Esq. dated January 27, 2006 ("1-27-06 Clifton Decl."); Exhibit A to the Declaration of Daniel E. Clifton, Esq., dated April 17, 2006). Such a submission clearly meets the

evidentiary threshold for the recovery of attorney's fees. Tri-Star Pictures v. Unger, 42 F. Supp.2d 296, 302-03 (S.D.N.Y. 1999) ("The actual original time sheets are not necessary; submitting an affidavit and attaching a computer printout of the pertinent contemporaneous time records is acceptable.").

Plaintiff staffed this litigation with two partners. Their number of hours worked and rates are as follows:

Daniel E. Clifton    103.4 hours[4] @ $400/hr = $41,360.00

Louie Nikolaidis      9.75 hours  @ $350/hr[5] = $ 3,412.50

I have reviewed plaintiffs' counsels' time records and there appears to be little, if any, "fat" to be trimmed.[6]  The only questionable expense that I find is that related to Mr. Nikolaidis' attendance at the March 3, 2005 preliminary injunction hearing.  Mr. Nikolaidis did not speak at the hearing, and though I suspect his presence assisted Mr. Clifton, I also suspect that it was assistance that could have been provided by a more junior attorney.  Rather than adjusting his rate, I shall

---

[4]Defendants challenge 1.2 hours of work plaintiff claims for August 8, 2005.  With plaintiff's consent, these 1.2 hours have already been deducted from the figure in the text.

[5]Plaintiffs ambiguously seek both $350 and $375 for Mr. Nikolaidis's hourly rate.  Because of the ambiguity I use the lower rate.

[6]Defendants themselves challenge less than fifteen hours of the time charged.

18

reduce the 4.5 hours he claims for attending the preliminary injunction hearing to 2.25 hours.

In all other respects, I find the number of hours claimed to be reasonable.

2. Reasonableness of
Hourly Rate Requested

I also find that the hourly rates requested -- $400 per hour for Mr. Clifton and $350 per hour for Mr. Nikolaidis -- to be reasonable.

Mr. Clifton has been practicing law for almost 30 years. He has been a partner at his current firm and its predecessors since 1980. He has taught at ABA-sponsored employment law programs and made presentations and conducted workshops at programs sponsored by the Center for Labor and Employment Law at NYU School of Law, the National Employment Lawyers Association, the Association for Union Democracy and Teamsters for a Democratic Union. He has also taught as an adjunct professor at Cornell University School of Industrial and Labor Relations and Rutgers University. He has served as an election officer, overseeing several union elections (1-27-06 Clifton Decl. ¶ 9). Fee awards to Mr. Clifton of up to $375 per hour have been approved in prior cases (1-27-06 Clifton Decl. ¶ 10).

Mr. Nikolaidis has been practicing law for just over twenty years and has taught courses in Labor Law at Rutgers University. He clerked for a Judge of the Appellate and Chancery Division of the Superior Court of New Jersey immediately after law school. He has been a partner at his current firm since 1993. Fee awards to Mr. Clifton of up to $300 per hour have been approved in prior cases (1-27-06 Clifton Decl. ¶ 11).

Given their experience, the rates sought by Mr. Clifton and Mr. Nikolaidis are reasonable for this District. See Access 4 All, Inc. v. Park Lane Hotel, Inc., 04 Civ. 7174 (SAS)(JCF), 2005 WL 3338555 at *4 (S.D.N.Y. Dec. 7, 2005) ("Within the last five years, courts have approved rates ranging from $250 to $425 per hour for work done by partners in small firms in this district."); Raniola v. Bratton, 96 Civ. 4482 (MHD), 2003 WL 1907865 at *7 (S.D.N.Y. Apr. 21, 2003) (approving hourly rates of $200-$400 for attorneys); Wilson v. Nomura Sec. Int'l. Inc., 01 Civ. 9290 (RWS), 2002 WL 1560614 at *5 n.2 (S.D.N.Y. July 15, 2002), rev'd on other grounds, 361 F.3d 86 (2d Cir. 2004) (using average hourly rates for attorney time of $143-$506 per hour); Santa Fe Natural Tobacco Co. v. Spitzer, supra, 2002 WL 498631 at *6-*9 (approving hourly rates of $115-$575 for attorneys); Rodriguez v. McLoughlin, 84 F. Supp.2d 417, 423 (S.D.N.Y. 1999) (approving $425 per hour for partner at large metropolitan firm); Berlinsky v. Alcatel Alsthom Compagnie Generale d'Electricite,

970 F. Supp. 348, 351 (S.D.N.Y.1997) (approving hourly rates of $495 for partners).

### 3.   Defendants' "Limited-Success" Argument

Defendants contend that the lodestar figure should be reduced because plaintiffs achieved only limited success in this action.   Specifically, defendants claim that plaintiffs failed to establish an LMRDA violation.

The logic supporting defendants' argument is odd.   The transcript of the March 3, 2005 hearing does not contain any ruling or suggestion of a ruling concerning the LMRDA claim. What clearly occurred was that Judge Daniels found that plaintiffs had established a probability of success with respect to their claim based on the DC 1707's constitution and, therefore, found it unnecessary to reach the LMRDA claim. Nevertheless, defendants claim that Judge Daniels' silence with respect to LMRDA claim somehow constitutes a finding that plaintiffs had failed to establish their LMRDA claim.   As a matter of logic, this does not follow; there is simply nothing in the record supporting the conclusion that Judge Daniels' silence with respect to the LMRDA claim was anything but silence and did not constitute any finding concerning the LMRDA claim.

Moreover, the principal purpose of this action was clearly Stokely's reinstatement as president. Her lost stipend was substantially less than attorney's fees sought here and could not have been the principal factor giving rise to this action.

Since the principal goal of this action was achieved and there is no basis for defendants' contention that plaintiffs achieved only limited success, there is no reason to reduce the lodestar figure.

4. <u>Summary</u>

For the forgoing reasons, I find that plaintiffs are entitled to recover for the following hours at the following rates:

Daniel E. Clifton    103.4 hours @ $400/hr =  $41,360.00

Louie Nikolaidis      7.5  hours  @ $350/hr = $ 2,625.00

**TOTAL:    $43,985.00**

Plaintiffs also seek to recover the following costs to which defendants have raised no objection:

Filing Fee              $250.00

03-03-05 Transcript     $166.50

12-07-05 Transcript     $ 19.20

Photocopies             $ 95.00

Hand Deliveries         $ 19.55

**TOTAL        $550.25**

IV. <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respectfully recommend that plaintiffs recover $43,985.00 in attorney's fees and $550.25 in costs for a total award of $44,535.25.

V. <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. <u>See</u> <u>also</u> Fed.R.Civ.P. 6(a) and 6(e). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States District Judge, 500 Pearl Street, Room 630, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. <u>Thomas v. Arn</u>, 474 U.S. 140,

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:   New York, New York
         August 25, 2006

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

Daniel E. Clifton, Esq.
Lewis, Clifton & Nikolaidis P.C.
Suite 2300
275 Seventh Avenue
New York, New York  10001-6708

Thomas M. Murray, Esq.
Kennedy, Jennik & Murray, P.C.
7th Floor
113 University Place
New York, New York  10003